## UNITED STATES ex rel. PRIMAKOW et al. v. HECHT, United States Marshal.

(District Court, S. D. New York. August 19, 1924.)

1. Criminal law ⬤⟹242(5)—Indictment constitutes prima facie evidence of probable cause in removal proceedings.

In removal proceedings, indictment constitutes prima facie evidence of probable cause, but is not conclusive and may be overcome by proof.

2. Criminal law ⬤⟹242(7) — That defendants were never physically within state of Texas held not to overturn government's prima facie case in removal proceedings to that jurisdiction.

In proceedings for removal of defendants to Texas for trial, in prosecution for using United States mails in furtherance of a conspiracy to defraud, that defendants were never physically within the state of Texas held not to overturn government's prima facie case,

since, if other defendants formed conspiracy to defraud in Texas, and at a later date, these defendants became parties thereto within New York district, and appropriate overt acts in Texas were thereafter committed by one or more of defendants, they subjected themselves to jurisdiction of Texas court.

3. Post office ⬤⟹48(4)—Indictment held to charge offense of using United States mails in furtherance of conspiracy to defraud.

In prosecution for using United States mails in furtherance of a conspiracy to defraud, indictment held to charge an offense.

4. Criminal law ⬤⟹242(4)—Indictment containing one good count is enough to justify order for removal.

If any indictment contains one good count, it is enough to justify an order for removal.

Application by the United States of America, on the relation of Joseph M. Primakow and another, for a writ of habeas corpus directed against William C. Hecht, United States Marshal for the Southern District of New York. Writ dismissed, and warrant for removal of relators issued.

Order affirmed in 7 F.(2d) 135.

William Hayward, U. S. Atty., of New York City (Moses Polakoff, Asst. U. S. Atty., of New York City, of counsel), for the United States.

Bennett E. Siegelstein, of New York City (Franklin Bien, of New York City, of counsel), for petitioners.

KNOX, District Judge. Upon March 28, 1924, a federal grand jury within the Southern District of Texas, Fifth Circuit, Houston Division, returned an indictment wherein it is charged that Joseph M. Primakow and Walter C. Rawles, the present relators, together with numerous other persons, had committed certain offenses against the United States, to wit, had used the United States mails in furtherance of a scheme or artifice to defraud, and had conspired so to do. The fraud and conspiracy were alleged to have been carried out in a campaign which had for its object the flotation of the corporate capital stock of the Mogul Producing & Refining Company.

Relators being found within this district, they were arrested, and proceedings, looking to their removal to the Southern District of Texas for trial, were instituted before United States Commissioner Hitchcock.

[1] At the hearing before the commissioner the government introduced into evidence a certified copy of the indictment returned against the relators, and offered proof identifying them as two of the per-

[*] Certiorari denied 45 S. Ct. 513, 69 L. Ed. ——.

sons named as defendants. The indictment constitutes prima facie evidence of probable cause, but it is not conclusive, and may be overcome by proof. Tinsley v. Treat, 205 U. S. 20, 27 S. Ct. 430, 51 L. Ed. 689.

In an endeavor to overcome the prima facie case made against them, each of the relators gave evidence before the commissioner. Generally the testimony was to the effect that neither of them was ever within the state of Texas, and that their only connection with the flotation of the Mogul Company's stock was that, acting upon behalf of Walter C. Rawles & Co., Inc., they executed in this city a contract, dated December 10, 1921, under which the sale of 2,000 shares of the common stock of the Mogul Company, at $1.50 per share, was undertaken. The contract provided that Walter C. Rawles & Co., Inc., was engaged as the Mogul Company's agents "with the exclusive right to deliver dividend checks and use of stockholders' list."

It was further understood and agreed that a general letter authorizing the sale of this stock should be sent to the stockholders of the party of the first part (Mogul Company) and an authorization to that effect for agents should be given to the party of the second part simultaneously with the execution of the contract. It was also provided that the Mogul Company should "guarantee and be responsible for the representations in (the) literature and shall not misrepresent the facts."

The Rawles Company was to be compensated by a 20 per cent. commission in sales.

The indictment charges as a part of the scheme to defraud "that on December 24, 1921, the board of directors of (the Mogul) corporation had declared a dividend of 3 per cent. on all outstanding stock and that said dividend would be delivered by a personal representative of the said corporation, when, in truth and in fact, as the defendants then and there well knew, the said board of directors had not declared a dividend of 3 per cent. or any dividend at all out of the profits of the said corporation, and that a 3 per cent. dividend would not be delivered by a personal representative of the said corporation to all of the holders of outstanding stock."

After the execution of the stock selling contract, the relators sent certain persons into the state of Florida to sell the securities of the Mogul Company. As a part of their selling equipment they carried dividend checks payable to stockholders of the company to whom they hoped to sell more stock. They seem to have met with some success, inasmuch as the relators testify to remittances made by them to the Mogul Company. They claim, however, to have severed all connection with the Mogul Company early in 1922.

After hearing the testimony, the commissioner held the relators for removal to Texas, and, pending the issuance of a warrant therefor by this court, remanded them to the custody of the United States Marshal. This writ of habeas corpus was then sued out.

[2] An examination of the record satisfies me that the relators should be removed to the Southern District of Texas for trial. It is my belief that they have not overturned the government's prima facie case. The fact that Primakow and Rawles were never physically within the state of Texas is not at all conclusive upon their freedom from guilt in the offenses charged against them. The testimony before the commissioner, to use the language of the Supreme Court in Price v. Henkel, 216 U. S. 488, 493, 30 S. Ct. 257, 260 (54 L. Ed. 581), "does not exclude the possibility that the conspiracy may have been formed in the District of Columbia without appellant being physically present when the conspiracy was formed. In re Palliser, 136 U. S. 257, 265 [10 S. Ct. 1034, 34 L. Ed. 514]; Burton v. United States, 202 U. S. 344, 387 [26 S. Ct. 688, 50 L. Ed. 1057, 6 Ann. Cas. 362]; United States v. Thayer, 209 U. S. 39, 43 [28 S. Ct. 426, 52 L. Ed. 673]."

If it be that certain defendants formed the conspiracy to defraud in Texas and that at a later date the relators became parties to the same in New York, and granting that appropriate overt acts in the Southern District of Texas were thereafter committed by one or more of the defendants, they subjected themselves to the jurisdiction of the Texas court.

[3, 4] Objection is made to the sufficiency of the indictment. I have examined the same, and believe it to properly charge an offense against the United States. If any indictment contains one good count, it is enough to justify an order for removal. See section 94, Zoline Federal Criminal Law. See, also, Benson v. Henkel, 198 U. S. 1, 25 S. Ct. 569, 49 L. Ed. 919.

The writ of habeas corpus will be dismissed, and a warrant for the removal of the relators to the Southern District of Texas may go forth.